The next case is in re Marriage of Lugge, number 519-0046, counsel ready? Ready, take a seat. You're back. Never left. Good to be here. May it please the court, for the audio record, my name is Curtis Flood, I'm from Collinsville, I represent Christie Lugge, the appellant. And we ask that this court reverse and remand on the issue of child support and maintenance, and more specifically, the determination of income for those purposes. That's all we ask. The standard of review, we had a tussle over it, and I guess we have not agreed on it yet. And so I have cited about eight cases, including cases from this court, that say that if there is no dispute on appeal and facts, then the standard is de novo. This court does not owe any deference to the trial court. Like I say, we do not have an agreement on the standard of review, but I don't see an issue of fact that is disputed. Very simply, the parties in this case had a marital estate, and they reached an agreement in the trial court as to who got what. They divided it all up, all of the property. They divided it up, not just divided it, I admire the effort that went into this, they valued it. Valued the property, figured out that based on property, the husband was getting more property value than the wife, my client, and the husband made an equalization payment, or agreed to make one, that would bring them up to within 1% of equal marital property. Great job. As I understand this case, Mr. Blood, this boils down to imputed interest, the wife got a large amount of cash, the trial court imputed interest, and the trial court, I think, was a six and a half or six and three quarters, something like that, interest rate. And the husband had a large amount of cash in his business that he carried, and there was an argument made, I believe, that there was a dividend income of $27,791, that that actually reflected the interest income on that cash in that business account. Yes. Now, that's really what I'd like you to focus on, because that really seems to be the real issue in this case. Does that, are you arguing that that dividend income doesn't count? Well, I think that's probably the necessary, I think that flows from my argument, yes, from our argument, is that the $27,791 doesn't count. What is that dividend income for? Where did that come from? I'm not a CPA, but the way I understood it, it was retained dividend earnings to the company. It was company's earnings. Well, I'd expect the appellee to get up here and say that was income to the company based upon that cash that he maintained for bonding availability. Well, I think it was. I think it was. I agree with that. So how is there a disparity in calculation if that income was actually received by him and used by him, and he got the benefit of that and she got the benefit of, you know, how is she mistreated when both incomes were treated by the trial court the same way? OK, great. Shortcuts a lot of my argument. Great. Great. The amount that was imputed to the husband as income was $27,000 a year, more or less. The amount that was imputed to the wife was almost $62,000 a year. So the imputed amount is a lot worse on us than it is on him. We're not dealing with the same amount of cash, though, are we? No, we're not. But husbands, when husband's trial counsel, he's not here, realized that the judge was going to impute income of $27,000 a year against the husband, he said something that was just absolutely spot on. He's practically quoted our Supreme Court. He said, we buy an asset through our settlement, and now I'm going to be charged as income for the asset I just paid full price for. I'm going to be charged as income for the asset I just paid full price for. Now, when they divided up the property, they did that first. They did that before they got to the income, and they looked at the various items of property and divided them up according to their attributes. I mean, you might want a car because it's shiny and it's fast. You might want a truck because you can haul stuff and make some money. But they might be different attributes, but you might say that based on how the parties value things, the cars look the same as the truck. One earns money, the other doesn't. When, if this had all been done at the same time, it would be different. But when the property is divided and valued first, then the attributes, including the money or the attributes of the property, is part of what you use to value it, to decide what you want and to assign a value to it. The property to then assign income to some of that property is to count it twice. It's to count that attribute twice. Once as property and once as income. Well, is it a disparity when it happens to both sides? It's not if it happens equally. For instance, my client with the cash could invest the cash. She could buy a company, then they would both have companies. Then what happened to the income-producing value of her cash? The fact that it's cash is not sacrosanct. Well, a court generally does not have to divide up property equally. True. It's just a fair, reasonable division. True. So what's not fair and reasonable about this particular action by the trial court? It's an unequal dollar amount that's being imputed to each party, but why is it not fair and reasonable? Because it's double-counting. Because when the parties have bargained with each other and separated out the property, here, you take this and I'll take that. The attributes of the property are already figured in, including income attributes. The parties have already valued those things. What they are getting is the value of property. They each get X dollars of property, and in this case, X is Y. I mean, it was the same amount. But it doesn't have to be the same amount. It doesn't have to be, but they agreed. It wasn't decided, it was agreed. So, they have the same amount of property. To say that they have anything other than the same amount of income from it, which actually should be zero, is to double-count it. Is to double-count it. It's to say, well, we were counting it as property, you got it as property, now we're going to count it as income, too. But its income value, its ability to produce income, is already reckoned in. It's already figured in when the property is divided. Trial counsel, for the other side, for the husband, he blew the lid off of that one when he said it. We buy an asset through our settlement, and now I'm being charged as income for an asset I paid full price for? That's what he's talking about. I paid full price for this. I already paid for this by taking it on my side and giving her something on her side. I already paid for that. I already paid its income value. He was right. But I guess somebody must have outlawed him because we didn't see it again from him. Or any sort of post-judgment motion. Ixnay, Ixnay, if the judge realizes what you're talking about, then he's not going to impute income to anyone. Which was right. Because what Mr. Courtney was saying was pretty much what our Supreme Court said in Zell's and in Tulsi, which we quoted in our main brief. Which is that you don't count things twice. You count them as property or you count them as income, but you don't count them twice. And when you say, okay, we've got equal property, but we don't have equal income from that property, now you're counting it twice. It's the position that the husband's counsel took is kind of novel. I mean, it may be your first impression. Have you seen a case where the judge imputed income based on the property? I looked. And just because I didn't find it doesn't mean it doesn't exist. But I couldn't find one. The practice of law is an art. The U.S. Supreme Court said so, and this proves it. I mean, that was a great idea. And it doesn't make it wrong because it's new, but it's got to make sense. Is it double counting? Sure, it's double counting. It's counting the same property as property and as income. It's double counting. It's that simple. Remember, if I have money, if I have cash, I can buy a company. Now we've both got companies. If I have a company, I can sell it for cash. Now I have cash. There's nothing sacrosanct about cash. What's important is the parties have basically the same amount of property. And so they've already paid full price for its attributes, for how fast it is, how shiny it is, how nice it is. If it's a house, what a great place it is to live in. If it's real estate, sellable real estate, can you get rent for it? It's all already paid for in that property. It shouldn't also be income. Courts do that all the time. They divide up the property and the courts have the authority then to consider the, you know, basically potential income from those assets. And your beef is the court didn't do it at the same time? Is that, I mean, there was first divide up the property by agreement. Well, it's a good question. The property, the court didn't divide up the property at all. The parties did. Parties reached an agreement and were very careful on paper to make it 50-50. Reserving income, I mean, reserving support and maintenance. So the court considered their agreement, approved it, and then considered the income potential from those assets. Right. Making its ruling on child support and maintenance. Right. Where is that prohibited in the law? Well, it's not prohibited, no, but it's got to make sense. If the court had divided the property and then figured the income, certainly the two would be linked. I mean, the court, if this court were to reverse on income for maintenance and child support purposes, certainly this court would also tell the trial court that property is still open. You may re-divide the property. We're going to send it back on the income, but you get to re-divide the property. But here, that's what makes this special, is first we've got this agreement which the parties have equalized the property. They equalized the property. Now, it doesn't make sense to say that the income value of that property is anything other than equal. It doesn't make sense. The husband also had to use that money that was retained for bonding money, which accounted for the business being able to make money, plus the interest it was able to earn in the meantime while being retained. So it actually earned money in two different ways for the husband, and the wife was actually only earning money based upon the imputed interest. So... I don't disagree. Well, I'm still not understanding how that's unfair or how that's wrong. When the parties negotiated for property, when they negotiated with each other and divided up the property, how did the parties decide what they wanted? Each item of property, each party assigned a certain value to it. Based on what? Based on its attributes. Again, the car and the truck. Well, and the business, its main attribute was its ability to make money. Sure. And so you had cash that was contributing to the business making money in two ways. One, it was earning interest, which returned dividends, and two, it was used in bonding power, which gave the business the ability to get more jobs and keep making profit. True. So... And the husband, all of that was imputed to the husband both ways, from the income to the business and the dividends that were charged against him. And the wife just had an interest rate imputed to her less than what was even asked for. True. But none of that, none of that should have been done. I'm out of time, obviously. Well, I cooked up a lot of your time, so... Well, only that... You can finish your point. Only that what makes this case special is not just the imputing the income, but the fact that the parties had divided the property equally. It's those two things that make this case unique, that make this case special. They divided it equally. They valued it and agreed it was equal. There's an equalization payment. Anything about this property that was significant to anybody was considered when they divided it, when they evaluated it. Now, to say that on top of that, there's income considerations, is what our Supreme Court says and sells, and in Tulsa, it's double counting. And the language of those cases fits this case very well. All right, thank you, counsel. You have an opportunity for rebuttal. Thank you. A few minutes. May it please the Court. My name is Janie Lindbat, and I am here for the appellee, James Lugie. I'd like to briefly touch on the standard of review argument that counsel raised in his brief and in his argument today. Not one of the cases that are cited to by the appellant in the briefs pertain to undisputed facts in the application of de novo review regarding a child support case for trial courts. The trial court's findings as to income are disputed. In this matter, the parties are in dispute as to whether the trial court considered interest income of both parties. That is a factual dispute. And case law explicitly states that a trial court's findings as to net income are within the sound discretion of the trial court. The case that was cited to in our brief, In Re, the Marriage of Morthy, specifically differentiated between a de novo standard of review and the more deferential standard to be applied to findings of net income, which is the abuse of discretion standard. If the appellant's argument were to prevail and the de novo standard of review were to be applied here, the floodgates would be open to litigants appealing cases where they simply disagreed with the trial court's findings as to child support or findings as to income, I'm sorry, and calculation of child support. The appropriate standard of review is abuse of discretion, and here the trial court did not abuse its discretion in determining each party's income for support purposes. To touch on a couple of statements that counsel made in his arguments, in his opening argument, trial counsel, Mr. Courtney, made an argument, an oral argument, regarding how the trial court should calculate each party's income based on the assets that each party received per the agreement of the parties in the judgment of disillusion of marriage. The actual argument that Mr. Courtney made was that James's income should not include the $600,000 to $700,000 in cash reserves that Bellow held. When the court discussed the qualified and unqualified dividends that were listed on James K-1 for 2016-2017, however, trial counsel did specifically state that that is income. The rate of return on the assets that are divided pursuant to the parties' property agreement is to be considered as income. And I believe, actually, counsel stated this in his reply brief, but if the court were to adopt the view that parties could not be charged for income received from property awarded in a divorce, then James couldn't be attributed for the income received from Bellow because that is property that he was awarded per the divorce. In that case, neither party would have any income. There would be no support obligation. So that would benefit my client, obviously, but it doesn't stand to reason. Further, this case is not that novel. Parties very often will settle substantial issues in the case and then come to the trial court to resolve the remaining issues, such as child support and maintenance. The parties did go through many months of negotiations to come to a property settlement, and the value of the assets that were awarded to each party were the value of the assets. The interest income that was received by the parties, in James' case, the qualified and unqualified dividends, and in Christy's case, the interest income received on her investment accounts, that was not included in the value of the property per the settlement agreement. Those two factors came into play when the court was to assess income for support purposes. The qualified and unqualified dividends that are listed on James' 2016-2017 Schedule K-1s are not retained earnings. They're return earnings on the cash assets held by Bellow, and that includes the $600,000 to $700,000 in the cash accounts for the bonding purposes. Specifically, the Supreme Court, and this is cited to in our brief, the Supreme Court outlined the definition of income from Black's Law Dictionary and stated, and found it to be money or other form of payment received from businesses, investments, royalties, gifts, and the like. Though James doesn't technically receive the dividend income,  but trial counsel did agree that it should still be included in his income, but that the $600,000 to $700,000 in cash assets that James did bargain for in the divorce, that could not be included in his income. In the same manner, Christy received over $1 million in cash, she received liquid investments, and the historical rate of return was $9.93. In following that same definition of income, the trial court should include in Christy's income the actual rate of return that she receives from those investments. But in a decision that is very favorable to Christy, the court actually reduced the asset that she received by the debt that she was also incurring for the Merrill residence, a couple of vehicles, and I think some other miscellaneous items. So reduced her assets by that amount, and then charged her a reduced rate of return. It would have been completely reasonable for the court to find Christy's income to be $99,000, which is what was requested by James prior to the final trial in this matter by applying the actual rate of return on the $1 million that she received. But instead, again, in a move that is very favorable to Christy, the court found her income to be $61,000. Christy or counsel made arguments stating that there was inequity in the interest that each party was assessed for income purposes. I'm not really sure how that's possible. While the numbers don't exactly match up, that's not really how we calculate income, that's not really how we calculate property distributions. We can't look at the $27,000 versus the $61,000. What we have to look at is what the actual rate of returns are. James was assessed his actual rate of return on Bellow's cash assets, whereas Christy, again, was assessed a reduced rate of return on a reduced amount of asset. This is also aside from the argument that the court would have been within its discretion completely to actually impute income to Christy, where she testified that her spending had not decreased even though Bellow for years now had not been making the income that it historically made. Her spending had not decreased. She had not looked for any employment. She had no reason that she could not work on a full-time basis but was just choosing not to and had no plans not to. So that the court, again, imputed a reduced rate of return on a reduced asset to her is still more favorable than the court imputing the actual rate of return on the actual asset and then also imputing a full-time salary to an individual who is not unable to work for any reason and had actually worked to determine the marriage but was just choosing not to at this point. For those reasons, we are requesting that the relief requested by the appellant be denied and the judgment of the trial court be affirmed in this matter. Thank you. Thank you, Counsel. Rebuttal. Thank you once again, Your Honor. The value of an asset, any asset, the value of an asset includes its earning power. The value of assets includes the asset's earning power. When parties divide assets equally by value, then if the court imputes income unequally, then the court is double-counting. The court is counting income, but its income-producing ability has already been figured in the value when the parties negotiate. The value of the asset includes its earning power when the parties divide by value, and then the court imputes income unequally. Now it has double-counting. Counsel, you referenced the Zales and Talty cases. Yes, Your Honor. If I understand correctly, those are both goodwill cases. They are. Does that make this case distinguishable from those or not? Well, every case can be distinguished. I like to think that you haven't completed the job of distinguishing a case until you've come up with a better one. And those principles are sound. Our Supreme Court says you count either property or income, but you don't count for both. You don't count the same for both. That's what it said about goodwill. Either goodwill is property or goodwill is income. You value it as property that you receive when we divide up the property, or you value income that you get from the goodwill, but you don't do both. It's a sound principle. The Supreme Court didn't have this sort of an issue before it. But I've got to think that if they considered it, they'd have gone the same way. It's double-counting. It's just double-counting. Now, if the court in this case had said, I attribute to both parties the same amount of income based on they got the same amount of property, and you can see that the court struggled with that. Should I do that? They each got the same amount of property. Is that what I should be doing? Yes. Yes. It should have been equal, or it should have been zero. The court was right there on the brink of getting it right. Trial counsel for the husband said just right. This is double-counting, Your Honor. Extend it. Don't say that. No, we're doing fine here. They did do fine here, but they shouldn't have. Paid twice. He got paid twice for that cash, but she got it. Yeah. Thank you. Thank you, counsel, for your arguments. We'll take this matter under advisement and render a decision in due course.